CASE No. 1117.

TRAPIER v. WALDO.

1. It is the policy of the courts to sustain a judicial sale when it can be done without violating legal principles or inflicting injury, but it will not be confirmed against the objections of a purchaser, where the title is bad or of doubtful validity.

2. A purchaser at a judicial sale is not affected by irregularities in the proceedings under which the sale was made, if the court had jurisdiction of the subject-matter and all proper parties were before it; and this rule applies as well to cases in which the purchaser objects to the title tendered, as where he defends his purchase. *Bulow* v. *Witte*, 3 *S. C.* 323, approved.

3. An action for foreclosure of mortgage of lands, lying in Georgetown county, was instituted in the Court of Common Pleas for Charleston county, in October, 1879, and no demand was made by the defendants for a change of the place of trial. *Held*, that the court in Charleston, under the first paragraph of Section 149 of the Code of Procedure, had jurisdiction of the action, and such jurisdiction having attached, it was not affected by the repeal of this paragraph in December, 1879, before the hearing.

4. But as to parties brought in by amendment after such repeal, one of whom was an infant, and the other—an adult—did not appear, the court in Charleston was without jurisdiction, for at that time the requirement of the law was that the action *must* be tried in the county where the lands lay. As to these parties, the order of foreclosure and sale was void.

5. In an action for foreclosure of mortgage of land, the personal representative of the mortgagor, who was dead, was not made a party, although the complaint demanded judgment for deficiency, if any. *Held*, that this nonjoinder could not be urged by the purchaser at the foreclosure sale, as an objection to the validity of the sale.

6. The administrator of a deceased heir-at-law of such mortgagor was not a proper party to the action.

7. Under the express authority conferred upon the Probate judge by Section 138 of the Code of Procedure, he may appoint a guardian *ad litem* to appear for infants who are parties to a cause in the Court of Common Pleas.

Before MACKEY, J., Charleston, April, 1881.

The opinion fully states the case.

*Messrs. W. St. J. Jervey, G. R. Walker, Rutledge & Young, C. R. Miles* and *T. W. Bacot,* for appellants.

*Messrs. Simonton & Barker,* contra.

November 19th, 1881. The opinion of the court was delivered by

McGowAN, A. J. Under proceedings in the case of *Trapier v. Trapier,* a rice plantation in Georgetown county, known as Windsor, was sold by order of court in 1870, and purchased by Mrs. Sarah C. H. Waldo, of New York, for $21,500, for which she gave five bonds, each for the sum of $4,300, and to secure the same, executed a mortgage of "that plantation or tract of land known as Windsor, on Black river, Georgetown county," consisting of several parcels, particularly described. The said Sarah died about 1873, leaving a paper purporting to be her last will and testament, executed in the State of New York, by which she undertook to devise Windsor to Horace Waldo and Francis Waldo, the latter of whom soon after died in New York, leaving as his heirs-at-law, his widow, Gertrude, and her infant son, Rhinelander Waldo, and two minor children by a former marriage, viz., Rosalie L. and Katherine L. Waldo. Horace Waldo was named executor of the will of the said Sarah. He qualified in the State of New York, and assumed to act as sole executor,

but the will was never lodged or proved in South Carolina, for the reason, as stated, that it was not executed in the presence of three witnesses, and, therefore, was not effective as a will in this State.

The bonds, secured by the mortgage aforesaid, were assigned, and are owned by different parties—one by Mrs. Charlotte T. Trapier, one by Benjamin F. Trapier, one by Richard S. Trapier, one by Hannah H. Jervey, wife of Arthur P. Jervey, and the remaining one by the plaintiff, Alicia S. Trapier, who instituted these proceedings to foreclose the mortgage. Without objection, the complaint was filed in *Charleston county,* October 13th, 1879, and, besides the owners of the other bonds named above, and the tenant in possession, the following persons were made defendants, viz., Horace Waldo, as heir, and as executor of the will of Sarah C. H. Waldo, and Rosalie L. Waldo and Katherine L. Waldo, minor children of the first wife of Frank Waldo, deceased, being heirs-at-law of Sarah C. H. Waldo at the time of her death.

The complaint prayed that the mortgage be foreclosed by sale of the land, "and the proceeds applied to the payment of the debt, and execution awarded for the balance, if any." Notice of *lis pendens* was filed in Charleston and Georgetown counties, which described the land and stated that the action was for foreclosure of mortgage, &c. To this complaint, Horace Waldo answered, both as executor and heir, November 8th, 1879. On the same day, Laurens N. Chisolm was appointed by the Probate judge of Charleston county, guardian *ad litem* of the infant defendants, Rosalie L. and Katherine L. Waldo, and, as such guardian, answered.

On February 2d, 1880, leave was given to amend the complaint, and May 19th, 1880, an amended complaint was filed, making Mrs. Gertrude Waldo, the widow of Frank Waldo, and Rhinelander Waldo, her infant son, residents of the State of New York, defendants, which amended summons and complaint were duly served upon the said defendants on June 1st, 1880, under an order of publication of May 29th, 1880. No new notice of *lis pendens,* after amendment, was filed. Under a general order of reference, by consent of all the counsel engaged, the master

made a report recommending that the plantation be sold, and the proceeds held subject to the further order of court, and all questions raised by the pleadings be reserved. July 16th, 1880, Judge Thomson made an order confirming the report, and ordering the land sold on the third Tuesday of December (21st), 1880.

The land was not sold under this order for the reason that Rhinelander Waldo was not represented when the order was made. On December 30th, Judge Wallace appointed W. M. Bruns, guardian *ad litem* of the infant, Rhinelander. On the next day, December 31st, 1880, Bruns filed his answer as guardian *ad litem,* and the master reported that the land had not been sold under the order of Judge Thomson because the infant, Rhinelander, was not then represented in the cause, and again recommended that the mortgaged premises be sold, &c.

On January 1st, 1881, Judge Wallace, by consent of all the counsel, confirmed the report and ordered sale. Under this order, Windsor was sold at public auction in the town of Georgetown, on February 1st, 1881, and was knocked down to the respondent, Benjamin Allston, as the highest and last bidder, at the price of $17,800. Judgment by default was taken against Gertrude Waldo on February 21st, 1881, being the first day of the term. The case was not put on calendar 6, and the judgment was not endorsed on the complaint.

After the sale, Mr. Allston went upon the Windsor plantation and employed labor preparatory to planting the same, but soon after he refused to take the land, and the matter was again referred to Master Clancey, and, upon his report, Judge Mackey, February 25th, 1881, issued a rule against Allston to show cause why he did not, as purchaser, comply with the terms of sale. To this rule he made return, refusing compliance, and alleging that for numerous irregularities and violations of law *in the proceedings* under which the sale was made, "it was impossible for the master to make a legal conveyance of said plantation." The question thus raised was also referred to Master Clancey, who, after a careful examination, made an able report, stating that, in his opinion, good titles could be made to Mr. Allston, and recommending that the rule should be made

absolute.   Judge Mackey overruled this report and discharged the rule.   From this order the appeal comes to this court upon the following exceptions:

1. Because his Honor erred in holding that the said respondent has shown reasonable grounds of objection to the title which it is the purpose of these proceedings to compel him to take, and that the rule be discharged' with his costs allowed him.

2. Because his Honor erred in holding that the sale was void because the action was for the foreclosure of a mortgage of a plantation in Georgetown county, and that it was tried in Charleston county, contrary to the mandate of Section 146 of the Code of Procedure, *Gen. Stat.* 597.

3. Because his Honor erred in holding that Gertrude Waldo, widow, and Rhinelander, the infant child of Frank Waldo, were not properly before the court when the cause was at issue in July, 1880, or at the time when the account should have been taken and proof had preparatory to a decree for foreclosure and sale, and are not bound by the decree.

4. That his Honor erred in holding that Katherine L. Waldo and Rosalie L. Waldo, the other infant children of Frank Waldo, were not properly made parties to the cause by the appointment of Laurens N. Chisolm as guardian *ad litem* by the Probate judge of Charleston county, inasmuch as no jurisdiction has been granted by the statute to a Probate judge to appoint guardians *ad litem* to represent infants in suits pending in the Court of Common Pleas.

5. Because his Honor erred in holding that after order to amend the summons and complaint by making new parties, a new notice of *lis pendens* should have been filed in the cause, there being, it is submitted, no requirement of law to that effect.

6. That his Honor erred in holding " that this being an action against infants, ordering a sale of their inheritance in land, a reference should have been held to inquire specially whether it was for the interest of the infants or necessary that the land should be sold, and a report thereon should have been made to the court before decree."

7. Because his Honor erred in holding " that inquiry should have been had as against the defendant Horace Waldo, who

represented the personal estate of S. C. H. Waldo, as to the sufficiency thereof, and of the estate of Frank Waldo for payment of the debts of S. C. H. Waldo before resort was had to the real estate of infant defendants. And that the administrators of S. C. H. Waldo and of Frank Waldo were necessary parties to the suit which sought a decree against their heirs for payment of the debts."

8. Because his Honor erred in holding "that the rule of the Court of Equity in enforcing a contract of sale against a purchaser requires that the objections to the title raise a rational doubt as to its validity, and this the respondent has done."

9. That his Honor erred in not ruling that the purchaser, by his action in going on the land and exercising acts of ownership, waived his right to make objections to irregularities in the proceedings or defects which may be cured by subsequent orders in this cause.

This was what is known as a judicial sale by the court as vendor. From the nature of our institutions such sales are necessary and common with us, and it is the policy to sustain them when it can be done without violating principles or injuring any one. We were gratified when it was announced at the bar that in making this question the respondent was animated only by a desire to test the validity of the sale under which he holds and to get good titles. It has been said that at such sales the rule of *caveat emptor* applies, and it does seem to have been held in this State, "that by the falling of the auctioneer's hammer, and by the entry of the sale by the master in his book, the contract of sale is complete," yet the court confirms these sales, and in doing so exercises large powers. In most cases a reference will be allowed to inquire into the validity of the title. By his bid the purchaser in some sense connects himself with the proceedings, and the rule is that if he refuse to take a conveyance and complete the purchase he may be ordered to do so. " But he cannot be compelled to take title if the same is incurably bad or of doubtful validity. If there is a defect in the title, and it is a curable one, and the purchaser is offered a confirmatory deed, which remedies the defect, he cannot refuse to complete the purchase." *Ror. Jud. Sales* § 155 ; 5 *Wait Pr.* 234.

In this case it is not alleged that there were any defects in the title of the mortgagor, but exclusively in the legal proceedings under which the land was sold. The parties to that proceeding, whose title it was the object to transfer, do not suggest any doubt as to the validity of the title. Neither plaintiff nor defendants— creditors, personal representatives or heirs of the mortgagor— make any objections; these are raised only by the purchaser.

It is well settled that a purchaser at a judicial sale is bound to make inquiry as to the jurisdiction of the court which ordered the sale, and whether all proper parties were before it, but beyond that he is in no way responsible for irregularities in the proceeding. This is certainly true when his title is assailed by others, and he acts defensively, and we suppose that the rule, at least to the same extent, applies when he acts offensively and makes the objection himself. Our view upon this subject is well expressed in the case of *Bulow* v. *Witte,* 3 *S. C.* 323 : "If we stretch the obligation of purchasers at public sales beyond the mere duty of ascertaining whether the court had jurisdiction in the matter in which it claimed to act, and whether all the parties to be bound are before it, in the language of Lord Redesdale, in *Benet* v. *Hamil,* 2 *Sch. & Lef.* 577, 'we shall introduce doubts on sales under the authority of the court which would be highly mischievous.' Something is certainly due to the purchasers at these sales from the confidence which the public resposes in the judgments of the courts of the country. They must be upheld, at least so far as they operate on the title of parties to the proceeding ; and if the title, though of infants, is thus alienated by the sale, the conveyance of the officer of the court operates as an estoppel to the same extent and in the same manner that the proper deed of an adult carrying his title would bar him from asserting it against his grantee," &c. *McNish* v. *Guerard,* 4 *Strobh. Eq.* 80 ; *Williman* v. *Holmes,* 4 *Rich. Eq.* 491.

*As to the alleged want of jurisdiction in the court of Charleston county to foreclose a mortgage on lands situate in Georgetown county.* There is no doubt that the Court of Common Pleas has general jurisdiction in the matter of foreclosing mortgages. That was part of the jurisdiction of the old Court of Chancery, to which the Court of Common Pleas succeeded when the jurisdic-

tions were united by the constitution of 1868. It is not enough, however, for the court to have a general jurisdiction of the subject-matter ; it must also have jurisdiction of the particular cause, and to have that, certain things are required. Although an action to foreclose a mortgage on real estate partakes somewhat of the nature of a proceeding *in rem,* the practice is settled that persons holding certain relations to the property must be made parties, and there have always been some rules of procedure as to *the local court* in which the proceeding should be had. In the time of our old Court of Chancery the place of trial was determined, not by the locality of the land, but by the county in which the defendants, or a majority of them, resided. In *Smith* v. *Petigru,* 2 *Strobh. Eq.* 324, a bill to partition real estate in Abbeville county was actually transferred to Charleston because the defendant resided there. According to the law, as it stood then, the complaint in this case was properly filed in Charleston, where all the defendants who were in the State resided.

But in 1870 the Code of Procedure was adopted, which prescribed a new rule as to the county in which trials should be had. The provisions on the subject are as follows :

" SEC. 146. Actions for the following causes must be tried in the county in which the subject of the action, or some part thereof, is situated, subject to the power of the court to change the place of trial in cases provided by statute. * * * 3. For the foreclosure of a mortgage of real property."

Section 147 provides that certain actions must be tried in the county " where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial in cases provided by statute."

Section 148 provides that in all other cases the action shall be tried in the county in which the defendant resides, &c., " subject, however, to the power of the court to change the place of trial in the cases provided by statute."

" SEC. 149. *If the county designated for that purpose in the complaint be not the proper county, the action may, notwithstanding, be tried therein, unless the defendant, before the time for answering expire, demand, in writing, that the trial be had in the proper county, and the place of trial be thereupon changed by*

*consent of parties or by the order of the court as is provided in this section.* The court may change the place of trial in the following cases : 1. When the county designated for that purpose in the complaint is not the proper county. 2. When there is reason to believe that an impartial trial cannot be had," &c.

It would seem that these regulations were prescribed exclusively for the benefit of *parties to the suit,* and that persons outside of the record have no rights in the matter, as cases of all kinds are allowed to be tried in any county by "consent of parties or by the order of the court." In the case before us, *no demand in writing was made that the trial should be had in Georgetown county.* Indeed, all the defendants who were in the State, resided in Charleston, and, doubtless, it was more convenient for both clients and lawyers that the case should be there heard.

In opposition to this view, the respondent insists that the provisions of Section 149, allowing the case to be tried in a county not indicated as the proper one, if no objection be made, do not apply to cases arising under Section 146 relating to the locality of lands, the requirements of which are jurisdictional and not subject to waiver. This court has decided, more than once, that the provisions of Section 149 applied to cases arising under Section 148 in relation to *the residence of defendants,* and that it was merely a regulation of practice. *Lebeschultz* v. *Magrath,* 9 *S. C.* 276 ; *Parker & Co.* v. *Grimes & Co., Ibid.* 284. We are not aware that the precise point here made has ever been decided in this State, but we do not see why the provisions of that section should not apply as well to cases under Section 146 as to *the location of lands,* as to cases under Section 148 as to *the residence of defendants.* In both sections, the power is given to change the place of trial "in the cases provided by statute." And one of the cases provided by statute is *"when the county* designated for that purpose is not the proper county."

The provisions of our code are identical with those of the State of New York, and in that State the exact question was decided in the case of *Marsh* v. *Lowry,* 26 *Barb.* 197. That was an action for the foreclosure of a mortgage on lands in Westchester county, and the place of trial was in the city of

New York. After judgment and sale of the mortgaged premises, the purchaser raised the objection that the action was not tried in the county where the premises were situated. It was held that "a demand to change the place of trial, and an order of court thereon, are essential to change the place of trial, *even in local causes of action,* when the complaint does not state the proper county. * * * The last section places the application to change the place of trial *because the cause of action is local,* on the same footing, in one respect, as when the motion is founded on the convenience of witnesses. In both cases there must be a demand or motion to change it, and in both there must be a consent to the change or an order of court. The proceedings are regular in the county first selected unless the consent to change be given or an order of court be made to that effect," &c. 16 *How. Pr.* 42.

But it is said that when the order of sale was made, the first six lines of Section 149 (indicated above in italics) had been repealed by the *act of* 1879, 17 *Stat.* 14, and, therefore, at that time, the requirement of Section 146 that the action "*must* be tried in the county," &c., was absolute and not subject to waiver. The complaint was filed October 13th, 1879, and the answers of the parties originally made defendants were all *filed before the repeal aforesaid,* December 18th, 1879. The right to change the place of trial existing at the time the answers were filed having been waived by the parties, the jurisdiction of the court in Charleston county then attached, and, having attached, it was not, as to the parties originally made defendants, divested by the subsequent repeal, which operated only prospectively from its passage; and, as to the parties who were originally made defendants, the court had rightful authority to proceed to a final determination of the cause. After the jurisdiction of the court vests, it cannot be divested by subsequent events. *Morgan's Heirs* v. *Morgan,* 2 *Wheat.* 290; *Mollan* v. *Torrance,* 9 *Wheat.* 539; 12 *Pet.* 164; *United States* v. *Dawson,* 15 *How.* 484.

*As to the alleged want of parties.* The purchaser at a fore-closure sale of mortgaged premises cannot be required to complete his purchase if one who was a necessary party was not

legally before the court when the order of sale was made. There were two decrees of foreclosure and orders of sale. Where the inquiry is whether the necessary parties were before the court, it is proper to consider the last as the decree in the case, January 1st, 1881. Were all necessary parties before the court on that day? The question is made by one who has no connection with the case except through his purchase of the land sold. If the proceedings are sufficient to carry good titles to the land he should not be heard to make objections which reach beyond that.

*First.* It is claimed that, this being an action to foreclose a mortgage, the personal representative of the mortgagor was a necessary party, and, conceding that Horace Waldo may have been the executor of Sarah C. H. Waldo in the State of New York, he was not her legal representative in South Carolina, and no such representative was before the court. Originally, the mortgagee had the right to take the land itself, and pay himself out of the rents and profits, or, as an alternative remedy, to foreclose by bill in chancery the debtor's equity of redemption. This latter was termed a strict foreclosure. But courts of equity delight to do complete justice, and they adopted the system of *foreclosure and sale,* causing the proceeds of sale to be brought into court and applied on the debt, the overplus, if any, to be paid to the mortgage debtor, but, in case of deficiency, the residue had to be collected at law. To avoid this circuity of action, another advance in practice was made, which was to allow in the foreclosure proceedings also a judgment for the remainder of the debt. *Ror. Jud. Sales* § 185.

This practice is useful, especially when, as in this State, the same court administers both law and equity. There is no doubt that this is generally the proper and safe practice. The plaintiff in this case made an effort to conform to it, and supposed she had done so when she made a party defendant " Horace Waldo, as executor of the last will and testament of Sarah C. H. Waldo, deceased," who, as executor, submitted himself to the judgment of the court. Under these circumstances the order of sale was made, but it now appears that there was a misapprehension in the matter—that the paper purporting to be

the will of Mrs. Waldo was not a will in South Carolina, and that Horace was not her personal representative in this State. Now, the question arises whether it was so indispensable to have before the court the personal representative of Mrs. Waldo, that the lack of such party, legally appointed, must make void the sale of the land.

Whilst the practice in the foreclosure of mortgages, above indicated, is the proper one, and especially useful for the mortgagee, as giving him complete justice, is he obliged to conform to it on pain of invalidating the whole proceeding, even as to the sale of the mortgaged premises? Would not the proceeding be maintainable, at least to carry title to the land, if, giving up the remainder of his debt, he should go for a strict foreclosure on the land alone? In such case, the personal representative of the mortgagor would not be a necessary party. We can very well see how such a proceeding might fail to afford full remedy to the mortgage creditors, and how the heirs of the mortgagor, having the right to push the debts over on the personalty, might object to it; but, if neither creditors nor heirs made objection, we do not see how the purchaser of the land could do so. "Although a mortgage is a debt primarily charged on the personal assets, a mortgagee is not bound to involve himself in an intricate account concerning the personalty of his debtor, and may, at his option, pursue, singly, his real security, leaving the terre-tenant to his remedies for re-imbursement. * * * Whatever may be the form of procedure as to foreclosure, the same propriety exists of exempting the mortgagee from the necessity, against his option, of intermeddling in the administration of the personalty. One having a ready remedy should not be delayed until the equities of all interested in the matter should be adjusted." *Bryce* v. *Bowers,* 11 *Rich. Eq.* 49; *Wightman* v. *Gray,* 10 *Rich. Eq.* 518; *Wright* v. *Eaves, Ibid.* 583.

Does it alter the case that here the complaint contained a prayer for judgment as to the balance of the debt which the proceeds of sale might leave unpaid? We do not consider this a suit for the enforcement of the debt of the ancestor against land in the possession of the heirs, but for the foreclosure of a

mortgage. In this view, the prayer for judgment against the heirs, for any balance of the debt, was inappropriate. Such prayer could only be made properly against the personal representative of the debtor-mortgagor. That prayer was made, but as soon as it appeared that Horace Waldo was not, in this State, the representative of Mrs. Waldo, it became ineffectual and mere surplusage. But the fact that such prayer was in the complaint did not vitiate other prayers which were good, or affect the relief granted to the extent which was authorized by the pleadings and the state of the parties. The heirs of the mortgagor were all parties, and the proceeding stood substantially as if its original scope had been only for a sale of the land by a strict foreclosure.

Mrs. Waldo had no personal property in the State, and administration on her estate would be purely formal. It is familiar doctrine that the administrator has no control over land, or right to control the proceeds thereof. *Bank* v. *Inglesby,* *Spears Eq.* 399. We are of opinion that the respondent cannot refuse to complete his purchase of the land, on the ground that the administrator of Sarah C. H. Waldo, appointed in South Carolina, was not a party to the proceedings under which the land was sold.

In the view we take of the case, the personal representative of Frank Waldo was not a proper party to the proceedings. He was not liable for the mortgage debt, and, in this proceeding, no judgment could be rendered for it or any part of it against his administrator. His widow and children were proper parties only for the reason that, after his death, they were heirs of Mrs. Sarah C. H. Waldo, who were necessary parties for the purpose of carrying to the purchaser her title which had descended to them.

*Second.* It is denied that the judge of Probate had the right to appoint guardians *ad litem* for the infant heirs-at-law, Rosalie L. Waldo and Katherine L. Waldo, and, therefore, they were not properly parties in the cause. Section 138 of the code, in the title headed " Parties to Civil Actions," under which the appointment was made, is in these words: " When an infant is a party he must appear by guardian, who may be appointed by

the court in which the action is prosecuted, or by a judge thereof, *or a Probate judge."* The corresponding section of the New York code is in the precise words of this section, except the last phrase, which is, *" or a county judge."*

We have not been referred to a case in which the point was made either as to the power of a *Probate* judge in this State, or that of a *county* judge in New York. Under these circumstances we can only adopt our own construction. In our State the Probate judge has jurisdiction in relation to the appointment of guardians and the management of the estates of their wards, and in all business appertaining to minors. We do not think that the provision authorizing said judge to appoint a guardian *ad litem* for an infant party to a case in another court is so extraordinary as to require us to disregard its express terms. The Court of Equity treats infant parties as wards of the court. These infant defendants were represented, and their rights fully considered.

*Third.* But it is insisted that Mrs. Gertrude Waldo and her infant son, Rhinelander, residents of the city of New York, were not legally made parties to the cause in Charleston county, and that Mrs. Waldo, when the attempt was made to bring her in as a party by publication, made default, and the order *pro confesso* was not entered until after the last decree of foreclosure and order of sale. Mrs. Waldo and her son were heirs of Frank Waldo, and, through him, necessary parties. Publication was not made against them until after the amendment to the complaint was filed, May 19th, 1880, which was subsequent to the repeal of the six lines of Section 149, December 18th, 1879, before referred to. An amendment for the purpose of making new parties must, upon a question of jurisdiction, be considered as to such parties an original proceeding. *Campbell* v. *Bowne,* 5 *Paige* 36; 4 *Wait Pr.* 691; *Jeffries* v. *Cook,* (Cal.) *Rep. Nov.* 1881, 586.

At the time the amendment was filed to make Mrs. Waldo and her son parties, the law permitting the trial by the court in Charleston, provided no objection was made, had been repealed, and that repeal had rendered nugatory the succeeding provision that " The court may change the place of trial in the following

T

cases : 1. When the county designated for that purpose in the complaint is not the proper county." At that time, Section 146 was left of force, without qualification or exception, requiring, in positive terms, that " The action must be tried in the county in which the subject of the action or some part thereof *is* situated."

It seems to us that the court in Charleston never acquired jurisdiction over *the persons of Gertrude Waldo and her infant son, Rhinelander.* This was not a mere irregularity, but a substantial defect, which rendered the decree of foreclosure and order of sale void, so far as these parties were concerned, and we are, therefore, constrained to hold that, to this extent, the title tendered the purchaser was defective and cannot be cured.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and McIVER, A. J., concurred.